## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| VALENTINA SHESTAWY, ET AL. | § | |
| | § | |
| VS. | § | |
| | § | C.A. No. 4:16-cv-00733 |
| CONSERVATIVE CLUB OF | § | |
| HOUSTON, INC., a.k.a. "C CLUB | § | |
| PAC", *ET AL.* | § | |

## DEFENDANTS SARAH PATEL PACHECO, KATHLEEN TANNER BEDUZE, AND CRAIN, CATON & JAMES, PC'S RULE 12(b)(6) MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Defendants Sarah Patel Pacheco, Kathleen Tanner Beduze, and Crain, Caton & James, PC ("CCJ Attorneys") jointly file this Rule 12(b)(6) requesting dismissal of the claims asserted against them.

Respectfully submitted,

**Martin, Disiere, Jefferson & Wisdom, L.L.P.**

*/s/ Dale Jefferson*

Dale Jefferson
Texas State Bar No. 10607900
jefferson@mdjwlaw.com
Raul H. Suazo
Texas State Bar No. 24003021
suazo@mdjwlaw.com
808 Travis Street, 20th Floor
Houston, Texas 77002
(713) 632-1700 Telephone
(713) 222-0101 Facsimile

**ATTORNEYS FOR DEFENDANTS SARAH PATEL PACHECO, KATHLEEN TANNER BEDUZE, CRAIN, CATON & JAMES, P.C.**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES...................................................................................iv

I.    NATURE OF CASE, STATEMENT OF ISSUES, AND SUMMARY OF
      ARGUMENT..........................................................................................................1

II.   STANDARDS OF REVIEW FOR PLEADING CONSTRUCTION ...................1

III.  STATEMENT OF FACTS DERIVED EXCLUSIVELY FROM PLAINTIFFS'
      ORIGINAL COMPLAINT AND ATTACHMENTS ...........................................2

      A.   The three sets of Plaintiffs ........................................................................3

      B.   Facts involving the Sheshtawy Plaintiffs. ...............................................3

      C.   Facts involving the Peterson Plaintiffs. ...................................................5

IV.   THE COURT SHOULD DISMISS THE SHESHTAWY PLAINTIFFS'
      CLAIMS AGAINST THE CCJ ATTORNYES ................................................10

      A.   Plaintiffs assert three RICO claims and two actions under Texas
           common law............................................................................................10

      B.   As a threshold matter, there are no factual allegations that describe
           Any actionable conduct by CCJ Attorneys as it relates to the Constructive
           Club of Houston......................................................................................11

      C.   The lawful payment of campaign contributions provides no basis for
           any claim.................................................................................................11

      D.   All remaining allegations arise out of CCJ Attorneys role as opposing
           Counsel ...................................................................................................13

      E.   The Sheshtawy Plaintiffs have not stated a RICO claim under Section
           1962(a). ...................................................................................................14

      F.   The Sheshtawy Plaintiffs have not stated a RICO claim under Section
           1962(b). ...................................................................................................15

      G.   The Sheshtawy Plaintiffs have not stated a RICO claim under Section
           1962(c) ....................................................................................................16

      H.   The Sheshtawy Plaintiffs have not stated a RICO claim under Section
           1962(d) ....................................................................................................18

I.  The Sheshtawy Plaintiffs have not sufficiently alleged mail or wire fraud. ..............20

J.  The Court should dismiss the state law claims because CCJ Attorneys
    Have litigation immunity. .......................................................................................20

K.  The Court should dismiss the state law claims because the Sheshtawy
    Plaintiffs failed to state a claim on which relief can be granted. ...............................21

V.  THE COURT SHOULD DISMISS THE PETERSON PLAINTIFFS'
    CLAIMS AGAINST THE CCJ ATTORNEYS ......................................................23

VI. APOPTION OF OTHER DEFENDANTS' RULE 12 MOTIONS AND
    CONCLUSION.............................................................................................................25

VII. CERTIFICATE OF SERVICE ...............................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Alpert v. Crain, Caton & James, PC,*
    178 S.W.3d 398, 405 (Tex.App.—Houston [1st Dist.] 2006, pet. denied)............................20, 21

*Amrhein v. Riechert,*
    2013 WL 1155473 (N.D. Tex. 2013)........................................................................................13

*Arizelli v. Cohen Law Offices,*
    21 F.3d 512, 521 (2d. Cir. 1994)........................................................................................17, 18

*Ashcroft v. Iqbal,*
    556 U.S. 662, 680, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)........................................19

*Bailey v. Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neil*
    423 F.Supp.2d 119, 121-122 (S.D.N.Y. 2006) ......................................................................18

*Baumer v. Pachl,*
    8 F.3d 1341, 1344 (9th Cir. 1993) ....................................................................................18, 19

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 556-57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)........................................19, 24

*Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, SRL,*
    832 F.Supp. 585 (E.D.N.Y. 1993) ........................................................................................16

*Bradt v. Sebek,*
    14 S.W.3d 756, 766 (Tex.App.—Houston [1st Dist.] 2001, pet. denied)...................................20

*Bradt v. West,*
    892 S.W.2d 56, 71-72 (Tex.App.—Houston [1st Dist.] 1994, writ denied)........................20, 21

*In re Burzynski,*
    989 F.2d 733, 741–42 (5th Cir.1993) ................................................................................16, 20

*Carousel Foods of America, Inc. v. Abrams & Company, Inc.,*
    423 F.Supp.2d 119, 121-122 (S.D.N.Y. 2006). ......................................................................18

*In re Cascade Sec. Litig.,*
    840 F.Supp. 1558 (S.D. Fla. 1993) ........................................................................................18

*Century Sur. Co. v. Blevins,*
    799 F.3d 366, 371 (5th Cir. 2015). ..........................................................................................2

iv

*In re Estate of Sheshtawy,*
    478 S.W.3d 82, 86 (Tex.App.—Houston [14th Dist.] 2015, no pet.)............................................4

*Empress Casino Joliet Corp. v. Johnston,*
    763 F.3d 723, 731 (7th Cir. 2014) ............................................................................................13

*Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.,*
    51 S.W.3d 573, 577 (Tex. 2001)........................................................................................17, 22

*Ferrer v. Chevron Corp.,*
    484 F.3d 776, 780 (5th Cir. 2007) ........................................................................................2, 17

*Gil Ramirez Group, LLC v. Houston Independent School Dist.,*
    2012 WL 5633880 (S.D.Tex. 2012) ..........................................................................................15

*Gordon v. Neugebauer,*
    57 F.supp.3d 766 (N.D. Tex. 2014).............................................................................................17

*Guerrero v. Katzen,* 571 F.Supp.
    714, 719 (D.D.C. 1983) *citing United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct.
    2524, 2532, 69 L.Ed.2d 246 (1981) ...........................................................................................14

*Guilbeaux v. Grand Casinos, Inc.,*
    114 F.3d 1181 (5th Cir. 1997) .....................................................................................................1

*Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC,*
    324 S.W.3d 840, 850 (Tex.App.-Houston [14th Dist.] 2010, no pet.)........................................22

*Huie v. DeShazo,*
    922 S.W.2d 920, 925 (Tex. 1996)........................................................................................21, 22

*Jackson v. City of Beaumont Police Dept.,*
    958 F.2d 616, 619 (5th Cir. 1992). ..............................................................................................2

*Kansa Reins Co. v. Congressional Mortgage Corp.,*
    20 F.3d 1362, 1366 (5th Cir. 1994). .............................................................................................1

*Kehr Packages, Inc. v. Fidelcor, Inc.,*
    926 F.2d 1406, 1411 (3d Cir.) *cert denied,* 501 U.S. 1222 (1991). ..........................................15

*Lewis v. Sprock,*
    612 F.Supp., 1316, 1325 (N.D. Cal. 1985) ................................................................................19

*Lui Ciro, Inc. v. Ciro, Inc.,*
    895 F.Supp. 1365 (D. Hawaii 1995)...........................................................................................19

*Luzerne County Retirement Bd. V. Makowski,*
    627 F.Supp.2d 506, 563 (M.D. PA 2007)..................................................................13

*Medina v. Vanderbilt Mortg. & Finance, Inc.,*
    2010 WL 3359541 (S.D. Tex. 2010) ......................................................................15

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,*
    781 F.3d 182, 202 (5th Cir. 2015). ............................................................14, 15, 19

*Nolte v. Pearson,*
    994 F.2d 1311 (8th Cir. 1993) ..............................................................................18

*Ortiz v. Collins,*
    203 S.W.3d 414, 422 (Tex.App.—Houston [14[th] Dist.] 2006, pet. denied). ..............................22

*Parker & Parsley Petroleum Co. v. Dresser Indus.,*
    972 F.2d 580, 584 (5th Cir.1992) ..........................................................................14

*Renfroe v. Jones & Assocs.,*
    947 S.W.2d 285, 288 (Tex.App.—Fort Worth 1997, writ denied)...........................................21

*Reves v. Ernst & Young,*
    507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). ..............................................17, 24

*Roger Whitmore's Auto. Services, Inc. v. Lake County, Illinois,*
    424 F.3d 659, 671-72 (7th Cir. 2005) ......................................................................13

*RSM Productions Corp. v. Freshfields, Bruckhaus, Deringer US, LLP,*
    682 F.3d 1043, 1051-52 (D.C. Cir. 2012)........................................................15, 17, 19

*St. Paul Mercury Ins. Co. v. Williamson,*
    224 F.3d 425, 445 (5th Cir. 2000) ........................................................................16

*Shushany v. Allwaste, Inc.,*
    992 F.2d 517, 520 (5th Cir.1993). ..........................................................................2

*Southland Securities Corp. v. Inspire Ins. Solutions, Inc.,*
    365 F.3d 353, 362 (5th Cir.2004). ..........................................................................2

*In re Sunpoint Securities, Inc.,*
    350 B.R. 741 (Bankr. E.D. Tex. 2006) ......................................................................15

*TruGreen Landcare, L.L.C. v. Scott,*
    512 F.Supp.2d 613, 625 n.11 (N.D. Tex. 2007) (Fitzwater, J.)
    (quoting *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005))...................................18

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
   355 F.3d 370 (5th Cir. 2004) .................................................................................2

*Valls v. Johnanson & Fairless, LLP*,
   314 S.W.3d 624, 635-36 (Tex.App.—Houston [14th Dist.] 2010, no pet.)...............22

*Vinson & Elkins v. Moran*,
   946 S.W.2d 381, 402 (Tex.App.—Houston [14th Dist.] 1997, writ dism.)................21

*Walsh v. Am.'s TeleNetwork Corp.*,
   195 F. Supp.2d 840, 846 (E.D. Tex. 2002). .........................................................2, 20

*Walter v. Drayson*,
   538 F.3d 1244, 1248-49 (9th Cir. 2008) .................................................................17

*Walter v. Drayson*,
   496 F.Supp.2d 1162 (D. Hawaii 2007). ...................................................................17

*Williams v. WMX Techs., Inc.*,
   112 F.3d 175, 177 (5th Cir. 1997) .......................................................................2, 20

*Zastrow v. Houston Auto Imports Greenway, Ltd.*
   789 F.3d 553, 561 n7 (5th Cir. 2015). .....................................................................17

## Statutes & Rules

18 U.S.C. § 1961(1) .........................................................................................16, 17

18 U.S.C. § 1962(a-d) ............................................................................................1

18 U.S.C. § 1962(a) ..............................................................................10, 15, 19, 24

18 U.S.C. § 1962(b) ........................................................................... 10-11, 15, 19, 24

18 U.S.C. § 1962(c) ..........................................................................11, 16, 19, 24

18 U.S.C. § 1962(d) ..............................................................................10, 19, 24

18 U.S.C.A. § 1962(a) .............................................................................................15

Texas Health & Safety Code Sec. 166.155.................................................................23

## I.
## NATURE OF CASE, STATEMENT OF ISSUES, AND SUMMARY OF ARGUMENT

No matter how the cause of action is styled, unhappy litigants dissatisfied with their settlements cannot invent a new appellate remedy by suing the presiding judge, a magistrate, the poor court coordinator, opposing counsel, court appointed ad-litems, and others based on some grand conspiracy. If this were permitted, dissatisfied parties would routinely sue judges, court coordinators, and even lawyers hired to advocate for opposing parties. If dissatisfied with that outcome, they could then just sue the new judge and new opposing attorneys in circular and endless litigation. Fortunately, the law does not allow this type of abusive litigation. Consequently, the Court should dismiss the claims of all three sets of plaintiffs in this case.

As to the CCJ Attorneys, the Court should first grant this Motion to Dismiss because the CCJ Attorneys had no connection to the Rizk Plaintiffs[1] or their litigation and no claim has been alleged. Second, the Sheshtawy[2] and Peterson Plaintiffs[3] have not stated a claim for relief under 18 U.S.C. § 1962(a-d) under the stringent standard used to analyze RICO claims. Third, the state law claims are barred because opposing attorneys have qualified immunity under the circumstances of this case and because the law bars such claims. Because the conclusory allegations do not state a cause of action, the Court should grant this Motion to Dismiss.

## II.
## STANDARDS OF REVIEW FOR PLEADING CONSTRUCTION

In a Rule 12(b)(6) motion, the Court accepts factual allegations in the pleadings as true and examines if a claim has been sufficiently stated to avoid dismissal.[4] This standard assumes

---

[1] The Rizk Plaintiffs are Edward G. Rizk and Maxwell Rizk.
[2] The Sheshtawy Plaintiffs are Valentina Sheshtawy and L.S. (A Minor Child) by Her Next Friend, Her Mother, Valentina Sheshtawy. In the underlying case the common law marriage claim of "Valentina Sheshtawy" was contested. This is still disputed, and as such, CCJ Attorneys refer to Ms. Sheshtawy as "Valentina."
[3] The Peterson Plaintiffs are Don Peterson, Lonny Peterson, and Mackey Peterson.
[4] *Guilbeaux v. Grand Casinos, Inc.*, 114 F.3d 1181 (5th Cir. 1997); *Kansa Reins Co. v. Congressional Mortgage Corp.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

well-pleaded facts; a court does not accept conclusory allegations, unwarranted factual inferences, or legal conclusions as true.[5] It is appropriate to consider the exhibits to a complaint for purposes of a Rule 12 motion.[6] A Court should grant a Rule 12(b)(6) motion when it appears that no relief could be granted under any set of facts that can be proven consistent with the allegations.[7] When a complaint raises a question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal on Rule 12(b)(6) grounds is appropriate.[8]

Finally, the Court may dismiss fraud claims that do not comply with Federal Rule of Civil Procedure 9(b).[9] The Rule 9(b) standards apply to RICO claims resting on fraud claims.[10] To that end, Rule 9(b) requires plaintiffs to plead "with particularity the circumstances constituting fraud or mistake, specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[11] To properly plead wire or mail fraud RICO claims under Rule 9(b), a plaintiff must plead the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what the person obtained by the representations."[12]

### III.
### STATEMENT OF FACTS DERIVED EXCLUSIVELY FROM PLAINTIFFS' ORIGINAL COMPLAINT AND ATTACHMENTS

It is evident from the Original Complaint that each of the three sets of plaintiffs had underlying litigation in Probate Court Number One with various attorneys and opposing parties. It is also evident from the Original Complaint that each of the plaintiff groups was dissatisfied

---

[5]  *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).
[6]  *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370 (5th Cir. 2004).
[7]  *Century Sur. Co. v. Blevins*, 799 F.3d 366, 371 (5th Cir. 2015).
[8]  *Jackson v. City of Beaumont Police Dept.*, 958 F.2d 616, 619 (5th Cir. 1992).
[9]  *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir.1993).
[10] *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Walsh v. Am.'s TeleNetwork Corp.*, 195 F. Supp. 2d 840, 846 (E.D. Tex. 2002).
[11] *Southland Securities Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir.2004).
[12] *See Williams*, 112 F.3d at 177; *Walsh*, 195 F. Supp. 2d at 846..

2

with the outcome of those proceedings.  Beyond this, it has been extremely cumbersome to locate any specific allegations against CCJ Attorneys.  In an effort to provide some clarity for the Court regarding the claims, CCJ Attorneys open with a statement of facts derived exclusively from the Original Complaint and accompanying attachments.

## A.     The three sets of Plaintiffs.

To begin with, there are three sets of plaintiffs asserting RICO and state common law claims.  Those three sets of plaintiffs are (1) the Sheshtawy Plaintiffs, (2) the Peterson Plaintiffs, and (3) the Rizk Plaintiffs.  There are no allegations by the Rizk Plaintiffs against the CCJ Attorneys, who were not involved in the Rizk litigation.  As a result, CCJ attorneys outline only the facts involving the Sheshtawy and Peterson Plaintiffs.

## B.     Facts involving the Sheshtawy Plaintiffs.

The Sheshtawy Plaintiffs allege that Sarah Pacheco and Kathleen Beduze are attorneys with the law firm of Crain, Caton & James, PC.[13]  They allege that CCJ Attorneys represented Defendants Nader Sheshtawy (Nader) and Hanya Sustache (Hanya).[14]  They further assert that Nader and Hanya were administrators of the Estate of Adel Sheshtawy in proceedings before Judge Loyd Wright of Harris County Probate Court One.[15]  In those proceedings, Valentina Sheshtawy brought claims against Nader and Hanya, who, in turn, brought counterclaims.[16]

In the underlying case, Valentina was initially represented by Donald Worley.[17]  On May 28, 2013, Valentina entered into settlement agreement.[18]  Valentina acknowledged in that agreement before a notary public that she was adequately represented by competent counsel of

---

[13]   Plaintiffs' Original Complaint at paragraphs 50 and 54.
[14]   *Id.* at paragraphs 159, 186, and 187.
[15]   *Id.* at paragraphs 51, 186-187.  It is important to note that the Sheshtawy Plaintiffs also allege
[16]   *Id.* at Appendix Item 1-2, pages 188-189 of 272.  An analysis of the settlement shows the existence of these claims in Cause No. 407,499-401; *Estate of Adel Sheshtawy;* In Probate Court No. 1 of Harris County, Texas.
[17]   *Id.* at Appendix Item 1-2 at page 191, paragraph 3.4(a)(x).
[18]   *Id.* at Appendix Item 1-2 at page 187.

her choosing.[19]   She acknowledged   that the "Agreement is intended to settle all Claims by Valentina to Adel's Estate and/or against Nader and/or Hanya including to any assets of Adel's Estate, the Cabo Blanco Property, any companies and/or assets of any of them.  An heirship will be entered determining Hanya, Nader, and Lily as Adel's sole heirs."[20]   Valentina further acknowledged that "Sarah Patel Pacheco, and the law firm of Crain, Caton & James, PC, solely represent Nader and Hanya and does not and has never represented any other Party and has not provided any other Party legal advice or services, or made any representation to any other Party."[21]  In short, CCJ Attorneys represented Valentina's opponents in contested litigation.

Valentina became dissatisfied with the settlement and unhappy with her attorney Donald Worley.  Valentina hired attorney John Elliott.[22]   However, Valentina replaced Mr. Elliott with Donald T. Cheatham.[23]  Valentina then added attorney Christopher Gabel to her legal team.[24] Throughout this process, Valentina often sought to re-litigate the settlement.[25]  When Valentina did not initially succeed in setting aside the settlement, she unsuccessfully sued her first attorney. (Mr. Worley).[26]  Then, Valentina appealed seeking relief on the grounds that the settlement was invalid.[27]  On September 29, 2015, Valentina lost her appeal when the Fourteenth Court of Appeals held that "Valentina's request to enjoin the sale of her homestead has no basis in law or in fact because the petition acknowledges that she signed an agreement permitting the sale..."[28] While the appeal was pending, Valentina was contacting third-parties (including the IRS) holding herself out as an authorized person in an effort to garner information regarding the

---

[19]   *Id.* at Appendix Item 1-2 at page 191, paragraph 3.4(a)(vii).
[20]   *Id.* at Appendix Item 1-2 at page 190, paragraph 3.1(f).
[21]   *Id.* at Appendix Item 1-2 at page 191, paragraph 3.4(a)(ix).
[22]   Plaintiffs' Original Complaint at paragraph 180.
[23]   *Id.* at Appendix Item 1-3 at page 120.
[24]   *Id.* at Appendix Item 1-2 at page 254.
[25]   *Id.* at Appendix Item 1-3 at pages 87-88.
[26]   Plaintiffs' Original Complaint at paragraph 203.
[27]   Plaintiffs' Original Complaint at paragraph 199.
[28]   *In re Estate of Sheshtawy*, 478 S.W.3d 82, 86 (Tex.App.—Houston [14th Dist.] 2015, no pet.).

estate.[29]  As Valentina continually sought to re-litigate the settlement, Associate Judge Ruth Ann

Stiles said the following during a March 4, 2016 permanent injunction hearing:

> Mr. Gabel, the settlement was entered into almost three years ago, and I know you
> have missed a large part of this, but we have had hearing after hearing after
> hearing after hearing, and I'm pretty sure I'm missing a few after hearings, on
> whether or not this was a settlement that should have been entered and the Court
> has repeatedly ruled that it was a very good settlement and we have approved the
> settlement on behalf of the estate and on behalf of the guardianship and Ms.
> Sheshtawy does not like the Court's rulings and so she continues to come back,
> which is why we are here today, so we are not going to, again, relitigate the
> administration of the estate and the finding by the Court that the – all of the
> settlement agreements have been entered to date are reasonable.[30]

After the hearing, the Court entered a permanent injunction barring Valentina from holding

herself out as an authorized representative and contacting third-parties for estate information.[31]

Two weeks later, having failed in all of her attempts to set aside the agreed settlement documents

before Judge Stiles, Judge Wright, and the Fourteenth Court of Appeals, this lawsuit was filed.

**C.      Facts involving the Peterson Plaintiffs.**

The Peterson Plaintiffs allege that Sarah Pacheco and Kathleen Beduze are attorneys with

the law firm of Crain, Caton & James, PC.[32]  The Peterson Plaintiffs further allege that the CCJ

Attorneys represented the Estate of late Ruby S. Peterson, the Peterson Family Trust II, the Co-

Executors of the Estate of Ruby S. Peterson (Carol Ann Manley and David Troy Peterson in

proceedings before Harris County Probate Court Number One.[33]  In that court, the Peterson

Plaintiffs had brought claims against and that were contested by Carol Ann Manley and David

Troy Peterson, so CCJ was representing parties that were adverse to the Peterson Plaintiffs.[34]

---

[29]   *Id.* at Appendix Item 1-3 at page 139.
[30]   *Id.* at Appendix Item 1-3 at pages 87-88.
[31]   *Id.* at Appendix Item 1-3 at page 166-170
[32]   Plaintiffs' Original Complaint at paragraphs 50 and 54.
[33]   *Id.* at paragraph 52, 265, and 266.
[34]   *Id.* at Appendix Item 1-3 at page 175.

More particularly, the underlying case involved the medical care and living placement of Ruby Peterson, who was 93 when the dispute commenced.[35]  In 1993, Ms. Peterson had signed a durable power of attorney in favor of Carol Ann Manley and David Peterson.[36]  She did so at the same time she executed her will.[37]  The Peterson Plaintiffs learned of the durable power of attorney in the fall of 2013.[38] The Peterson Plaintiffs wanted to move Ms. Peterson away from Silverado Senior Living Care Facility because they were purportedly unhappy with the drug prescriptions and medical decisions being made by physicians.[39]  So on November 15, 2013, the Peterson Plaintiffs had Ms. Peterson sign a new Medical Power of Attorney designating themselves as agents.[40]  Silverado declined to accept the Power of Attorney.[41]  Ms. Peterson had dementia,[42] and physicians had diagnosed her as being incapacitated.[43]  Silverado was naturally reluctant to release Ms. Peterson based on a new Power of Attorney executed earlier that day.

Eventually, the Peterson Plaintiffs initiated a guardianship proceeding, and the case landed in Probate Court Number One.  Because Ms. Manley and David Peterson were interested parties to the case, CCJ Attorneys appeared as opposing counsel to Peterson Plaintiffs.[44]  On February 25, 2014, Judge Wright appointed W. Russ Jones to serve as the attorney-ad-litem.[45]  On March 27, 2014, Judge Loyd Wright appointed Jill Young from MacIntyre, McCulloch, Stanfield & Young as the guardian ad litem.[46]  Over the next several months, the guardian and attorney-ad-litem each investigated and reported on their own findings.  Also, Ms. Peterson's

---

[35]  *Id.* at Appendix Item 1-3 at page 180.
[36]  *Id.* at Appendix Item 1-3 at page 180.
[37]  *Id.* at Appendix Item 1-3 at page 180.
[38]  *Id.* at Appendix Item 1-3 at page 181.
[39]  *Id.* at Appendix Item 1-3 at page 187.
[40]  *Id.* at Appendix Item 1-3 at page 181.
[41]  *Id.* at Appendix Item 1-3 at page 188.
[42]  Plaintiffs' Original Complaint at paragraphs 315, 326, and 332.
[43]  Plaintiffs' Original Complaint at paragraph 275.
[44]  *Id.* at paragraph 52, 265, and 266.
[45]  *Id.* at paragraph 268.
[46]  Plaintiffs' Original Complaint at paragraph 267.

medical records and pertinent financial documents were produced.[47] But events did not unfold as the Peterson Plaintiffs desired. Ms. Peterson remained at Silverado to their dissatisfaction.

The Peterson Plaintiffs then took more drastic measures. On July 17, 2014, the Peterson Plaintiffs' (through new attorney Candice Schwager) sued Carol Anne Manley and David Peterson, who were their siblings and CCJ Attorneys' clients. The Peterson Plaintiffs also sued Silverado, two of its employees, and a physician associated with the facility.[48] Without any corroborating evidence, the Peterson Plaintiffs baselessly alleged that the defendants were keeping Ms. Peterson at Silverado against her will and subjecting her to dangerous medications.[49] The Peterson Plaintiffs also alleged that crimes were being committed against Ms. Peterson.[50] The Peterson Plaintiffs' lawyer posted on her blog that Silverado was excessively drugging Ms. Peterson and otherwise engaging in criminal acts.[51]

On July 18, 2014, Silverado's counsel (Josh Davis) wrote a letter demanding that Ms. Schwager pull disparaging information down from her website.[52] The Peterson Plaintiffs' responded through Ms. Schwager, who dismissed the demand as frivolous.[53] Ms. Schwager threatened that, unless her clients received their way, Silverado would be hit with a federal lawsuit including RICO claims and that Fox News 26 and the Houston Chronicle were standing by to report on the story.[54] The parties did not resolve their controversies at that time.

On July 28, 2014, the Peterson Plaintiffs filed an Application for Injunctive Relief seeking to have Ms. Peterson removed from Silverado and asserting claims of false imprisonment, the improper drugging of Ms. Peterson, and other highly charged accusations of

---

[47] *Id.* at Appendix Item 1-4 at page 81.
[48] *Id.* at Appendix Item 1-3 at page 175.
[49] *Id.* at Appendix Item 1-3 at pages 175-216.
[50] *Id.* at Appendix Item 1-3 at pages 175-216.
[51] *Id.* at Appendix Item 1-4 at page 11.
[52] *Id.*
[53] *Id.* at Appendix Item 1-4 at page 29.
[54] *Id.* at Appendix Item 1-4 at page 36.

criminal wrongdoing at Silverado.[55]   Judge Wright gave the Peterson Plaintiffs a four-day hearing to come forward with evidence.[56]   The hearing took place beginning on August 11, 2014.[57]   Given the lack of evidence, Judge Wright denied the injunction.[58]

On September 18, 2014, Judge Wright held a hearing on a Motion for Sanctions filed by the attorney-ad-litem and guardian ad-litem.[59]   The Court deferred ruling at the time.   On September 25, 2014, Silverado filed a Motion to Dismiss under Texas Rule of Civil Procedure 91a asserting that the claims had no basis in law.[60]   On October 18, 2014, the family members entered into a Rule 11 Agreement.[61]   It was signed by the Peterson Plaintiffs, their third attorney Phil Ross, CCJ Attorney Sarah Pacheco and her clients (Carol Anne Manley and David Peterson), the attorney ad-litem, and the guardian-ad-litem.[62]   The Rule 11 Agreement provided that CCJ Attorneys' clients would continue serving as the agent pursuant to the 1993 Power of Attorney, that a new facility would be investigated and located for Ms. Peterson, that all children could visit Ms. Peterson, that the children could take Ms. Peterson for outings beyond the facility under certain conditions, that nobody would try to have Ms. Peterson sign any legal documents, that the Peterson Plaintiffs approved the financial accounting they were provided, that the Peterson Plaintiffs shall release and dismiss with prejudice any claims against the CCJ Attorneys' clients, and among other things, that nobody would seek sanctions against the Peterson Plaintiffs or their attorney Phil Ross (but not Candice Schwager).[63]   An inch above the signatures was a statement in bold, twenty-point font which stated the following:

---

[55]   *Id.* at Appendix Item 1-3 at pages 218.
[56]   Plaintiffs' Original Complaint at Paragraph 329.
[57]   *Id.* at paragraph 294.
[58]   *Id.* at paragraph 294.
[59]   *Id.* at Appendix Item 1-4 at page 80.
[60]   *Id.* at Appendix Item 1-4 at page 88.
[61]   *Id.* at Appendix Item 1-4 at pages 94, 108.
[62]   *Id.* at Appendix Item 1-4 at pages 110-111.
[63]   *Id.* at Appendix Item 1-4 at pages 108-110.

**THE PARTIES AGREE THAT THIS AGREEMENT SHALL BE A BINDING NONREVOCABLE AGREEMENT UNDER THE TEXAS ESTATES CODE SECTION 1055.151 AND IS NOT SUBJECT TO REVOCATION BY THE PARTIES.[64]**

Silverado did not participate in signing the family settlement agreement.

On November 10, 2014, the Court issued two sanctions orders against Candice Schwager, one in the lawsuit involving Silverado and the other in the general guardianship proceeding.[65] In the first order involving the Silverado lawsuit, Judge Wright awarded $10,000.00 in sanctions finding that Candice Schwager had violated Rule 3.07 of the Texas Disciplinary Rules of Professional Conduct, which would have related to publicizing information on her blog and her efforts to involve the Houston Chronicle and Fox 26 News.[66] In the second order, Judge Wright awarded $5,000.00 in sanctions against Candice Schwager finding as follows:

> …the allegations complained of did not have evidentiary support nor were they at the time of signing, likely to have evidentiary support after a reasonable opportunity for further investigation. The Court further finds that, at the time of signing of the offensive pleading and motion, this action had been on file for approximately eight (8) months, that Ruby S. Peterson's medical records and pertinent financial records had been provided to Plaintiffs and their counsel, and that the Plaintiff Respondents and their Attorneys had a reasonable opportunity to investigate the truthfulness or falsity of their claims and allegations prior to signing the pleading and motion made the subject of this Motion for Sanctions.[67]

The Court only awarded sanctions against Ms. Schwager and further added that the money would be used solely for the benefit or Ms. Peterson.[68] That same day, Judge Wright granted Silverado's Motion to Dismiss under Rule 91a of the Texas Rules of Civil Procedure.[69]

On January 11, 2015, Ms. Peterson died.[70] Despite the need to wrap-up the affairs of the case, the Peterson Plaintiffs moved to dismiss the guardianship as moot five days later.[71] The

---

[64]  *Id.* at Appendix Item 1-4 at page 110.
[65]  *Id.* at Appendix Item 1-4 at pages 79-82.
[66]  *Id.*
[67]  *Id.*
[68]  *Id.*
[69]  *Id.* at Appendix Item 1-4 at pages 85.

Peterson Plaintiffs then filed a Motion to Set Aside Rule 11 Agreement for Illegality, Lack of Consideration, Fraud, and Emotional/Financial Duress.[72]   The Peterson Plaintiffs alleged that the Rule 11 Agreement was procured by fraud, executed under duress and because of coercion, that no consideration was exchanged, and that the document was void as a matter of law.[73]   Basically, the Peterson Plaintiffs were trying to get out of the deal that they and their lawyer had signed. Judge Wright rejected these arguments and instead entered a Final Judgment pursuant to the terms of the parties' Rule 11 Agreement.[74]   The matters about which the Peterson Plaintiffs had complaints are now on appeal,[75] as the Peterson Plaintiffs decided to file this lawsuit.

IV.
**THE COURT SHOULD DISMISS THE SHESHTAWY PLAINTIFFS'
CLAIMS AGAINST THE CCJ ATTORNEYS.**

**A.       Plaintiffs assert three RICO claims and two actions under Texas common law.**

Based on virtually no specific allegations of a criminal enterprise beyond dissatisfaction with the public proceedings in the underlying case, the Sheshtawy Plaintiffs have asserted three RICO claims against CCJ Attorneys.  In conclusory fashion, they have each alleged that CCJ Attorneys engaged in (1) a pattern of racketeering to control Probate Court One, the Conservative Club of Houston, and each of the estates at issue in the underlying proceedings, (18 U.S.C. § 1962(b)),[76] (2) a pattern of racketeering activity that provided CCJ Attorneys with income that was reinvested to establish or operate some unlawful enterprise (18 U.S.C. § 1962(a),[77] and (3) a conspiracy to obtain control over the Conservative Club of Houston, Harris County Probate Court 1, and the respective estates at issue in the underlying litigation (18 U.S.C.

---

[70]   Plaintiffs' Original Complaint at paragraph 258.
[71]   *Id.*at Appendix Item 1-4 at page 125.
[72]   *Id.* at Appendix Item 1-4 at page 94.
[73]   *Id.* at Appendix Item 1-4 at page 94.
[74]   *Id.* at Appendix Item 1-4 at pages 120-123.
[75]   Plaintiffs' Original Complaint at paragraph 336.
[76]   Plaintiffs' Original Complaint at paragraph 415-420.
[77]   Plaintiffs' Original Complaint at paragraph 421-426.

10

§ 1962(d)).[78]   The Sheshtawy Plaintiffs may also be alleging a cause of action under 18 U.S.C. §

1962(c)(conducting or participating in a RICO enterprise through a pattern of racketeering)

though that statute is not specifically cited. The Sheshtawy Plaintiffs loosely allege, without

explanation, that the alleged RICO enterprise affects interstate commerce.

Finally, the Sheshtawy Plaintiffs assert without any specificity that CCJ Attorneys

breached a fiduciary duty and committed common law fraud.  For several reasons as shown

below, the Court should grant this Motion to Dismiss because the Sheshtawy Plaintiffs have

failed to state a claim upon which relief may be granted.

**B.    As a threshold matter, there are no factual allegations that describe any actionable conduct by CCJ Attorneys as it relates to the Conservative Club of Houston.**

In paragraphs 428-429 of the Original Complaint, the Sheshtawy Plaintiffs allege that

"Defendants...conspired to violate 18 U.S.C. § 1962(b) to obtain...control over Defendant

[Conservative Club of Houston]..."   However, the Sheshtawy Plaintiffs allege no specific,

factual link connecting the Conservative Club of Houston to CCJ Attorneys or their underlying

case.  The Conservative Club of Houston appears 15 times in Plaintiffs' Original Complaint,[79]

but every allegation is conclusory and without any factual specificity.

The Rizk Plaintiffs seem to generically complain that a conspiracy exists because J. Cary

Gray was an opposing counsel while also serving as treasurer of the Conservative Club of

Houston ("C Club").[80]   But this is all Plaintiffs allege.   This mere association provides no

foundation for a RICO claim or state common law cause of action.  It strains even further to ask

the Court to somehow accept this fanciful conspiracy to take over the Conservative Club of

Houston as a valid pleading against parties such as CCJ Attorneys who had no involvement in

---

[78]   Plaintiffs' Original Complaint at paragraph 427-429.
[79]   Plaintiffs' Original Complaint at paragraphs 17-18, 22, 123-25, 149, 260, 32-, 343, 413-14, 416, and 428-29.
[80]   Plaintiffs' Original Complaint at paragraph 22.

11

the underlying Rizk case. It is further a strain on law and logic because Mr. Gray had no role in

the Sheshtawy case. In other words, it entirely lacks factual support or plausibility to allege that

Judge Wright always ruled against Sheshtawy[81] because of some undescribed connection to the

C Club. The Original Complaint contains not even a conclusory allegation of an affiliation

between CCJ Attorneys and the C Club. Because the allegations do not assert any factual basis

of a conspiracy between CCJ Attorneys and the C Club, the Court should grant this Motion to

Dismiss.

**C.      The lawful payment of campaign contributions provides no basis for any claim.**

Plaintiffs allege that there is a financial connection between Judge Wright and CCJ

Attorneys.[82] Plaintiffs assert that CCJ Attorneys contributed to Judge Wright's campaign and

may thus be held liable under RICO. Specifically, Plaintiffs allege the following:

> Attached hereto marked as Exhibit "2"…is the Record from the Harris County
> Texas Clerk of the reported campaign contributions for the election of Defendant
> Judge Loyd Wright as Harris County Probate Judge 1, which reflect that most of
> the lawyer Defendants herein contributed to the election of Defendant Judge Loyd
> Wright as Harris County Probate 1 Judge. There is a financial connection with
> those Defendants and Defendant Judge Loyd Wright.[83]

The combined total of $1,000.00 in publicly disclosed campaign contributions that CCJ

Attorneys made to Judge Wright's campaign over the course of several years[84] is not a financial

connection under RICO. Plaintiffs do not allege that these contributions were concealed or a

sham. They do not allege that CCJ Attorneys devised some shell entities to funnel excessive

campaign contributions in violation of election laws. Plaintiffs do not claim there was a back

room meeting whereby CCJ Attorneys curried illegitimate rulings from Judge Wright or Judge

Stiles in exchange for a nominal campaign contribution similarly made by hundreds of other

---

[81]   Plaintiffs' Original Complaint at paragraph 320. While the Sheshtawy Plaintiffs did not make this allegation,
       they did incorporate these allegations in the causes of action.
[82]   Plaintiffs' Original Complaint at paragraph 130.
[83]   Plaintiffs' Original Complaint at paragraph 130.
[84]   *Id.* at Appendix Item 1-1 at pages 96 and 262.

12

attorneys (including several that represented the Sheshtawy Plaintiffs).[85]  Because these types of requirements are mandated by Rule 9, Plaintiffs have alleged no basis for the Court to predicate a RICO claim on a routine campaign contribution.

Indeed, "[t]he solicitation and acceptance of campaign contributions is the very nature of politics, and in the absence of [some allegation or] evidence indicating some wrongdoing independent of legal solicitation [and acceptance] of campaign contributions, the contributions...all of which were publicly disclosed in campaign finance reports, is evidence of nothing."[86]  The fact that campaign contributions were made cannot, without more, support liability.  To hold otherwise would open for prosecution not only conduct that has long been well within the law, but also conduct that in a very real sense is unavoidable so long as campaigns are financed by private contribution as they have been from the beginning of the nation.[87]  In *Amrhein v. Riechert*,[88] the Northern District of Texas rejected a conspiracy claim that lawyers exchanged campaign contributions for favorable rulings. The Court observed that it was not plausible that the numerous defendants could be part of some racketeering scheme.[89]  As a lawful campaign contribution cannot support a RICO claim, the Court should dismiss this case.

**D.     All remaining allegations arise out of CCJ Attorneys role as opposing counsel.**

CCJ Attorneys looked hard in the 190 pages comprising Plaintiffs' Original Complaint for any non-conclusory factual allegations.  The closest allegation are the Sheshtawy Plaintiffs' remarks that CCJ Attorneys as opposing counsel (1) did not rectify an incomplete probate

---

[85]  *See,* Plaintiffs' Original Complaint at Appendix Item 1-1 at page 182 and Appendix Item 1-2 at page 7 (contributions by Donald Worley); *see also Id.*at Appendix Item 1-2 at page 98 and compare with Plaintiffs' Original Complaint at paragraph 180 (attorney John Elliott).

[86]  *Roger Whitmore's Auto. Services, Inc. v. Lake County, Illinois*, 424 F.3d 659, 671-72 (7th Cir. 2005); *Luzerne County Retirement Bd. V. Makowski*, 627 F.Supp.2d 506, 563 (M.D. PA 2007).

[87]  *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 731 (7th Cir. 2014).

[88]  2013 WL 1155473 (N.D. Tex. 2013).

[89]  *Id.* at *12.

inventory,[90] (2) moved for sanctions and injunctive relief against Valentina in the underlying litigation,[91] (3) advised the court that a Bulgarian lawyer tangentially relevant to the litigation was found through the Washington Embassy when purportedly found through Valentina's Bulgarian ex-husband from years ago,[92] (4) testified during the permanent injunction hearing purportedly (but not really) in violation of Texas Rule of Professional Conduct 3.08,[93] and (5) submitted incorrect information to the Social Security Administration to stop benefits to Valentina.[94] Each allegation, albeit baseless, involves some alleged action by CCJ Attorneys that occurred in the normal course of representing parties opposing Valentina.

**E.      The Sheshtawy Plaintiffs have not stated a RICO claim under Section 1962(a).**

Congress' primary intention in passing RICO was to prevent organized crime from infiltrating businesses and other economic entities.[95] It was not designed to prevent a lawyer from zealously representing the interests of his or her client in court against an opposing party. These Congressional goals manifest themselves in the statutory language. To state a claim under § 1962(a), the Sheshtawy Plaintiffs had to plead: "(1) the existence of an enterprise, (2) the defendant's derivation of income from a pattern of racketeering activity, and (3) the use of any part of that income in acquiring an interest in or operating the enterprise."[96] In other words, an injury must flow from the use of racketeering income instead of merely the predicate acts.[97]

First, the Sheshtawy Plaintiffs failed to allege facts that CCJ Attorneys derived income from a pattern of racketeering. This allegation is patently frivolous as to Ms. Beduze as she is a

---

[90]    *Id.* at paragraph 165.
[91]    *Id.* at paragraphs 190 and 245.
[92]    *Id.*
[93]    *Id.* at paragraph 252.
[94]    *Id.* at paragraph 196.
[95]    *Guerrero v. Katzen,* 571 F.Supp. 714, 719 (D.D.C. 1983) *citing United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2532, 69 L.Ed.2d 246 (1981).
[96]    *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,* 781 F.3d 182, 202 (5th Cir. 2015).
[97]    *See Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 584 (5th Cir.1992).

senior associate.   Regardless, analyzing court filings, filing pleadings, arguing to the Court, testifying to matters learned while counsel, and communicating with the government are routine legal services for which lawyers bill.[98]   Second, the Sheshtawy Plaintiffs did not allege that CCJ Attorneys utilized income from racketeering to gain any interest in an enterprise.   Third, the Sheshtawy Plaintiffs did not allege any "investment injury" that they sustained based on CCJ Attorneys alleged use of racketeering funds.[99]   It is not enough to allege that CCJ Attorneys obtained funds, reinvested them in the enterprise, and thus allowed the enterprise to continue causing further injury.[100]   Alleging an injury only from the predicate racketeering acts alone is insufficient because § 1962(a) does not prohibit those acts.[101]   Given these deficiencies, the Court should dismiss the Sheshtawy Plaintiffs claims under 18 U.S.C.A. § 1962(a).

**F.      The Sheshtawy Plaintiffs have not stated a RICO claim under Section 1962(b).**

The purpose of § 1962(b) is to prevent the hostile infiltration of an enterprise through acts of racketeering.[102]   To state a claim under § 1962(b), the Sheshtawy Plaintiffs had to show that its injuries "were proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity"—a nexus requirement.[103]   In other words, the Sheshtawy Plaintiffs must allege that CCJ Attorneys' utilized a pattern of racketeering to acquire an interest in Probate Court One or Mr. Sheshtawy's Estate, which then caused an injury distinct from the asserted predicate acts.[104]   Here, the Sheshtawy Plaintiffs have not alleged that

---

[98]   *See RSM Productions Corp. v. Freshfields, Bruckhaus, Deringer US, LLP*, 682 F.3d 1043, 1051-52 (D.C. Cir. 2012)(granting Rule 12(b) dismissal and writing that lawyer's provision of legal services is more likely explained by the normal business practice of providing legal services for and representing clients).

[99]   *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1411 (3d Cir.) *cert denied*, 501 U.S. 1222 (1991).

[100]   *Medina v. Vanderbilt Mortg. & Finance, Inc.*, 2010 WL 3359541 (S.D. Tex. 2010).

[101]   *N. Cypress Med. Ctr. Operation Co.*, 781 F.3d at 201; *In re Sunpoint Securities, Inc.*, 350 B.R. 741 (Bankr. E.D. Tex. 2006).

[102]   *Gil Ramirez Group, LLC v. Houston Independent School Dist.*, 2012 WL 5633880 (S.D.Tex. 2012).

[103]   *N. Cypress Med. Ctr. Operation Co.*, 781 F.3d at 202.

[104]   *Gil Ramirez Group, LLC*, 2012 WL 5633880 * 13.

CCJ Attorneys used profits from a pattern of racketeering to acquire control of any enterprise.[105] Plaintiffs have not alleged any facts demonstrating that CCJ Attorneys gained an interest in or had a controlling share of Probate Court One (or that an actual interest could be gained in governmental entity such as Probate Court One). The Settlement Agreement attached by the Sheshtawy Plaintiffs confirms that CCJ Attorneys did not gain an interest in any Sheshtawy Estate.[106] And, the Sheshtawy Plaintiffs have alleged no injury distinct from the acts that they assert are predicate acts. Consequently, the Court should grant this Motion to Dismiss.

**G.      The Sheshtawy Plaintiffs have not stated a RICO claim under Section 1962(c).**

The Sheshtawy Plaintiffs did not specify that they were bringing a claim under Section 1962(c), but CCJ Attorneys addresses this section out of an abundance of caution (and without waiving objection to an appropriate pleading) given that the breadth of case law discusses RICO claims involving professional service providers under this provision. Section 1962(c) prohibits "any person employed by or associated with any enterprise" from participating in or conducting the affairs of that enterprise through a pattern of racketeering activity.[107] To state a valid claim upon which relief can be granted under § 1962(c), a plaintiff must allege facts that show (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.[108]

As to the second element, a plaintiff must allege a violation of two or more "predicate acts" of racketeering activity enumerated in 18 U.S.C. § 1961(1) and that the predicate acts form a pattern because they are related to each other and have continuity.[109] The predicate acts must be federal crimes identified in § 1961 or state crimes such as murder, kidnapping, gambling,

---

[105] *See Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, SRL,* 832 F.Supp. 585 (E.D.N.Y. 1993)(dismissing 1962(b) claim against attorney for failure to state a claim).
[106] *Id.* at Appendix Item 1-2 at page 187.
[107] *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 445 (5th Cir. 2000).
[108] *See In re Burzynski,* 989 F.2d 733, 741–42 (5th Cir.1993).
[109] *Id.*

arson, robbery, bribery, extortion, dealing in obscene matter, dealing in a controlled substance, or various federal crimes.[110]   Plaintiffs have not alleged any specific facts indicating that CCJ Attorneys committed any state or federal crimes.   While Plaintiffs do frequently conclude that mail or wire fraud was committed, a court should not accept conclusory allegations, unwarranted factual inferences, or legal conclusions as true.[111]

As to the third element, the Supreme Court in *Reves v. Ernst & Young*[112] set forth the test applicable to professionals allegedly associated with a RICO enterprise.   The Court upheld dismissal of claims against an accounting firm that performed a corporate audit stating that in order to conduct or participate, directly or indirectly, in the conduct of an enterprise's affairs for RICO purposes, one must participate in the operation or management of the enterprise itself.   In *Zastrow v. Houston Auto Imports Greenway, Ltd.*[113] the Fifth Circuit applied the *Reves* standard while affirming summary judgment of a 1962(c) claim that a party brought against an opposing law firm from a prior proceeding.   The Court further acknowledged that several other circuit courts have declined to extend RICO liability to an attorney's provision of routine legal services.[114]   Some of those cases include the following:

- *Walter v. Drayson*,[115] held that Rule 12 dismissal was appropriate on a § 1962(c) claim because no claim had been stated based on an attorneys' performance of services including writing emails, giving advice, and taking positions in court.

- *RSM Productions Corp. v. Freshfields Bruckhaus Deringer US, LLP*,[116] dismissed a § 1962(c) case under Rule 12 when the allegation that attorney knew it was furthering a fraud by providing representation in an arbitration.

- *Arizelli v. Cohen Law Offices*,[117] dismissed case because attorney who represented other alleged RICO violators had no role in management of enterprise.

---

[110]   *Gordon v. Neugebauer*, 57 F.supp.3d 766 (N.D. Tex. 2014).
[111]   *Ferrer*, 484 F.3d at 780.
[112]   507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).
[113]   789 F.3d 553, 561 n7 (5th Cir. 2015).
[114]   *Id.*
[115]   538 F.3d 1244, 1248-49 (9th Cir. 2008). *See also Walter v. Drayson*, 496 F.Supp.2d 1162 (D. Hawaii 2007).
[116]   682 F.3d 1043 (D.C. Cir. 2012).

- *Baumer v. Pachl*,[118] affirmed dismissal because attorney did not direct the affairs of the enterprise through legal services involved preparing letters to forestall and cover up the fraud, drafting a partnership agreement, and assisting in bankruptcy proceedings, even though these could be steps that perpetuated the alleged fraud.

- *Nolte v. Pearson*,[119] granted a directed verdict for music company's law firm which prepared allegedly false opinion letters and informational memoranda regarding music recording leasing program information as it did not participate in operation or management of enterprise.

- *Carousel Foods of America, Inc. v. Abrams & Company, Inc.*,[120] granted dismissal and sanctions for a § 1962(c) claim because sending a letter in response to another lawyer's letter reiterating a legal position in a pending lawsuit is not an activity in furtherance of a RICO enterprise.

- *Bailey v. Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neil*,[121] dismissing § 1962(c) case because after *Reves*, merely providing legal services does not create RICO liability under the operation and management standard.

- *In re Cascade Sec. Litig.*,[122] affirmed dismissal of § 1962(c) claim because allegation that law firm drafted false press releases with reckless disregard of financial condition did not show operation of enterprise for RICO liability.

In light of all the pleading deficiencies and the many authorities entitling CCJ Attorneys to dismissal, the Court should grant this Rule 12(b) Motion to Dismiss.

## H.   The Sheshtawy Plaintiffs have not stated a RICO claim under Section 1962(d).

To prove a RICO conspiracy, the Sheshtawy Plaintiffs must establish (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense.[123] A RICO conspiracy thus has RICO-specific requirements—an agreement by at least two conspirators to engage in a pattern of

---

[117]   21 F.3d 512, 521 (2d. Cir. 1994).
[118]   8 F.3d 1341, 1344 (9th Cir. 1993).
[119]   994 F.2d 1311 (8th Cir. 1993).
[120]   423 F.Supp.2d 119, 121-122 (S.D.N.Y. 2006).
[121]   938 F.Supp. 825 (S.D. Fl. 1996).
[122]   840 F.Supp. 1558 (S.D. Fla. 1993).
[123]   *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 625 n.11 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005)).

racketeering.[124]  Mere association with the enterprise is not actionable; agreement is essential.[125]

Further, if a plaintiff fails to properly plead a RICO claim under §§ 1962(a), (b), or (c), it

correspondingly fails to properly plead a conspiracy claim under § 1962(d).[126]

  The Court should dismiss the § 1962(d) claim because the Sheshtawy Plaintiffs failed to

state a claim under §§ 1962(a-c).  As a result, the conspiracy claims fail under controlling Fifth

Circuit authority.[127]  The Court should additionally dismiss the claim because the Sheshtawy

Plaintiffs have not alleged any specific facts detailing an agreement to commit a RICO offense,

what the agreement was, how it was reached, and when it was entered.[128]  These types of missing

details are necessary to state a claim under § 1962(d).  As explained in *Twombly,* allegations that

a defendant acted in ways consistent with a conspiratorial agreement, but also equally well

explained by legitimate economic incentives, do not suffice to show illegality.[129]  Likewise,

unsupported conclusory allegations are not entitled to be assumed true, and dismissal is proper

when a conspiracy allegation does not plausibly suggest an illicit accord because the conduct

could be compatible with or explained by, lawful, unchoreographed free-market behavior.[130]

  Here, the allegations that CCJ Attorneys acted improperly in the underlying litigation

could be equally (and more likely) explained by non-conspiratorial means.  It could be that CCJ

Attorneys did what it was hired to do – zealously represent clients.  These are legitimate ends,[131]

and it is implausible to infer that a lawyer committed racketeering by representing and being paid

by a client now accused of wrongdoing.[132]  The Court should grant this Motion to Dismiss.

---

[124] *Id.*

[125] *Baumer,* 8 F.3d at 1344.

[126] *N. Cypress Med. Ctr. Operating Co,* 781 F.3d at 203.

[127] *Id.*

[128] *Lewis v. Sprock,* 612 F.Supp. 1316, 1325 (N.D. Cal. 1985); *Lui Ciro, Inc. v. Ciro, Inc.,* 895 F.Supp. 1365 (D. Hawaii 1995).

[129] *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

[130] *Ashcroft v. Iqbal,* 556 U.S. 662, 680, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

[131] *See, RSM Productions Corp.,* 682 F.3d at 1050-51.

[132] *Id.*

I.     **The Sheshtawy Plaintiffs have not sufficiently alleged mail or wire fraud.**

A plaintiff alleging RICO mail fraud must allege the following "1) a scheme to defraud by means of false or fraudulent representation, 2) interstate or intrastate use of the mails to execute the scheme, 3) the use of the mails by the defendant connected with scheme, and 4) actual injury to the plaintiff."[133] "To properly plead RICO claims under Rule 9(b), [a plaintiff] must plead the time, place and contents of the false representations, as well as the identity of the person making the misrepresentations and what the person obtained by the representations."[134] The Sheshtawy Plaintiffs have met none of these requirements regarding CCJ Attorneys. Therefore, the Court should grant this Motion to Dismiss.

J.     **The Court should dismiss the state law claims because CCJ Attorneys have litigation immunity.**

Texas law discourages lawsuits against an opposing counsel if the lawsuit is based on the fact that counsel represented an opposing party in a judicial proceeding.[135] An attorney has a duty to zealously represent his clients within the bounds of the law.[136] In fulfilling this duty, an attorney has the right to interpose defenses and pursue legal rights that are deemed necessary and proper without being subject to liability or damages.[137] If an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing the client, the attorney would be forced to constantly balance his/her own potential exposure against the client's best interest.[138] To promote zealous representation, attorneys have a qualified immunity from civil liability with respect to non-clients, for actions taken in connection with representing a

---

[133] *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993).
[134] *See Williams*112 F.3d at 177; *Walsh*, 195 F. Supp. 2d at 846.
[135] *Bradt v. Sebek*, 14 S.W.3d 756, 766 (Tex.App.—Houston [1st Dist.] 2001, pet. denied).
[136] *Bradt v. West*, 892 S.W.2d 56, 71-72 (Tex.App.—Houston [1st Dist.] 1994, writ denied).
[137] *Alpert v. Crain, Caton & James, PC*, 178 S.W.3d 398, 405 (Tex.App.—Houston [1st Dist.] 2006, pet. denied).
[138] *Id.*

client in litigation.[139]   The qualified immunity protects attorneys from liability if they committed wrongful conduct in an underlying proceeding[140] or, for example, filed frivolous motions.[141]   The only basis for imposing liability on an attorney is when the lawyer participates in independently fraudulent activities that are foreign to the duties of an attorney.[142]   The Sheshtawy Plaintiffs have not alleged any facts to support an assertion that CCJ Attorneys engaged in independently fraudulent activities.  Because all of the alleged conduct asserted against CCJ Attorneys occurred in connection with the litigation, the Court should grant this Motion to Dismiss.

**K.     The Court should dismiss the state law claims because the Sheshtawy Plaintiffs failed to state a claim on which relief can be granted.**

The Sheshtawy Plaintiffs have asserted breach of fiduciary duty and common law fraud causes of action against CCJ Attorneys.  The Court should dismiss both because the Sheshtawy Plaintiffs have no stated a claim on which relief can be granted on either cause of action.

First, the Sheshtawy Plaintiffs claim that CCJ Attorneys owed fiduciary duties to Valentina because she was a beneficiary of the estate.[143]   But this is not correct.  An attorney hired by the executors or trustees to advise them in administering the estate or the trust represents the executors or trustees and not the beneficiaries.[144]   There are no facts alleged which show that the Sheshtawy Plaintiffs established an attorney-client relationship with CCJ Attorneys. Moreover, Valentina was not a beneficiary of the estate or a wife, and Valentina acknowledged "Hanya, Nader, and Lily as Adel's sole heirs."[145]   In fact, Valentina acknowledged that "Sarah Patel Pacheco, and the law firm of Crain, Caton & James, PC, solely represent Nader and Hanya

---

[139] *Id.*
[140] *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex.App.—Fort Worth 1997, writ denied).
[141] *West*, 892 S.W.2d at 72.
[142] *Alpert*, 178 S.W.3d at 406.
[143] Plaintiffs' Original Complaint at paragraphs 187-188.
[144] *Huie v. DeShazo*, 922 S.W.2d 920, 925 (Tex. 1996); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 402 (Tex.App.—Houston [14th Dist.] 1997, writ dism.).
[145] *Id.* at Appendix Item 1-2 at page 190, paragraph 3.1(f).

and does not and has never represented any other Party and has not provided any other Party legal advice or services, or made any representation to any other Party."[146]  As a matter of law, the Sheshtawy Plaintiffs have not alleged a breach of fiduciary duty claim that can be sustained.

Second, the Sheshtawy Plaintiffs did not state a fraud claim against CCJ Attorneys. Fraud consists of (1) a material, false representation, (2) that the speaker knew was false but made recklessly as a positive assertion without knowledge of its truth, (3) which was intended to induce another to act, and (4) the other person was injured by justifiably relying.[147]  Fraud by nondisclosure is (1) a failure to disclose material facts when there was a duty to disclose, (2) the defendant knew of the facts and that plaintiff was ignorant of the facts without an opportunity to discover them, (3) the defendant was deliberately silent to induce plaintiff to take some action, and (4) plaintiff suffered injury as a result of acting without knowledge.[148]

The Sheshtawy Plaintiffs have not alleged any misrepresentation by CCJ Attorneys and instead acknowledge that CCJ Attorneys made no misrepresentations.[149]  They have not alleged any reliance, and under Texas law, any reliance on opposing counsel in litigation would not be justifiable in any event.[150]  They have not alleged any basis to suggest that CCJ attorneys had a duty to disclose when Texas law dictates that there was no duty.[151]  Because the Sheshtawy Plaintiffs have failed to state a claim, the Court should grant this Motion to Dismiss.

## V.
## THE COURT SHOULD DISMISS THE PETERSON PLAINTIFFS' CLAIMS AGAINST THE CCJ ATTORNEYS.

The legal issues involving the Sheshtawy and Peterson Plaintiffs are similar and will not

---

[146]  *Id.* at Appendix Item 1-2 at page 191, paragraph 3.4(a)(ix).
[147]  *Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).
[148]  *See Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC,* 324 S.W.3d 840, 850 (Tex.App.-Houston [14th Dist.] 2010, no pet.).
[149]  *Id.* at Appendix Item 1-2 at page 191, paragraph 3.4(a)(ix).
[150]  *Valls v. Johnanson & Fairless, LLP*, 314 S.W.3d 624, 635-36 (Tex.App.—Houston [14th Dist.] 2010, no pet.); *Ortiz v. Collins*, 203 S.W.3d 414, 422 (Tex.App.—Houston [14th Dist.] 2006, pet. denied).
[151]  *Huie*, 922 S.W.2d at 925; *Moran*, 946 S.W.2d at 402.

22

be fully repeated.  CCJ Attorneys examined Plaintiffs' Original Complaint for any specific, non-conclusory allegations the Peterson Plaintiffs made against CCJ Attorneys.  The closest remarks to a factual allegation include the statements that CCJ Attorneys, as opposing counsel, (1) objected based on a lack of notice to delay an injunction hearing for twelve days,[152] (2) opposed an injunction over a four-day hearing,[153] (3) advised clients not to accept a settlement offer,[154] (4) opposed the Peterson Plaintiffs efforts to visit their mother aside from two brief outings,[155] (5) opposed the application of Texas Health & Safety Code Sec. 166.155 during the litigation,[156] (6) took legal positions that enabled the clients to allegedly misappropriate more than $450,000.00 from Ms. Peterson's Estate and Trust,[157] (7) were paid $50,000.00 in legal fees from the Peterson Family Trust without court approval,[158] (8) received a pre-paid cell phone that was confiscated from Ms. Peterson by Silverado,[159] (9) took positions in litigation that allowed dangerous medicines to be forced on Ms. Peterson,[160] (10) purportedly coached a medical doctor on how to testify,[161] (11) did not return calls about when Ms. Peterson could be moved from Silverado,[162] and (12) asked the Court to ratify the mediated settlement.[163]  CCJ Attorneys found no other non-conclusory allegations.  All the above unmeritorious allegations arise out of CCJ Attorneys representation of opposing parties in contested litigation.

Given the similarity and the desire to avoid repetition, CCJ Attorneys incorporate all of the arguments made for dismissal of the Sheshtawy claims and assert them here against the

[152]   Plaintiffs' Original Complaint at paragraph 294.
[153]   Plaintiffs' Original Complaint at paragraph 329.
[154]   Plaintiffs' Original Complaint at paragraph 338.
[155]   Plaintiffs' Original Complaint at paragraph 295.
[156]   Plaintiffs' Original Complaint at paragraph 322.
[157]   Plaintiffs' Original Complaint at paragraph 277, 281, and 292.
[158]   Plaintiffs' Original Complaint at paragraph 281.
[159]   Plaintiffs' Original Complaint at paragraph 312.
[160]   Plaintiffs' Original Complaint at paragraph 319 and 321.
[161]   Plaintiffs' Original Complaint at paragraph 331.
[162]   Plaintiffs' Original Complaint at paragraph 338.
[163]   Plaintiffs' Original Complaint at paragraph 342.

Peterson Plaintiffs. Specifically, the Court should grant this motion to dismiss because the Peterson Plaintiffs have not alleged any actionable conduct between CCJ Attorneys and Conservative Club of Houston sufficient to state a claim. The Peterson Plaintiffs remarks about lawful campaign contributions do not state a RICO or state common law claim.

Also, the Peterson Plaintiffs have not stated a RICO claim under § 1962(a). Specifically, the Peterson Plaintiffs did not allege facts that (1) CCJ Attorneys derived income from a pattern of racketeering activity, (2) CCJ Attorneys used income derived from racketeering to acquire an interest in the enterprise, or (3) demonstrate any injury they sustained because of the alleged investment of moneys by CCJ Attorneys into the purported enterprise.

As to the claims under § 1962(b), the Peterson Plaintiffs have not alleged the CCJ Attorneys used profits from a pattern of racketeering to acquire control of any enterprise. The Peterson Plaintiffs have not alleged that CCJ Attorneys gained an interest in or had a controlling share of any enterprise. And the Peterson Plaintiffs alleged no injury that was distinct from any of the predicate acts they vaguely assert CCJ Attorneys committed.

As to the § 1962(c) claims, the Peterson Plaintiffs did not allege with requisite specificity (or beyond merely conclusory statements) any predicate acts committed by CCJ Attorneys. The Peterson Plaintiffs did not allege facts and the law would not sustain a claim that CCJ attorneys controlled or participated in an enterprise under the Supreme Court's standard from *Reves*.[164]

Also, the Petersons have no valid claim under § 1962(d) because the Peterson Plaintiffs did not allege a valid claim under § 1962(a-c). Further, the Peterson Plaintiffs did not allege any facts detailing the agreement to commit a RICO offense as required by the *Twombly*[165] pleading standards. Moreover, the Peterson Plaintiffs did not sufficiently alleged mail or wire fraud.

---

[164] 507 U.S. 170, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993).
[165] *Twombly*, 550 U.S. 544, 556-57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

24

Finally, the Court should dismiss the Peterson Plaintiffs' state law claims. First, CCJ Attorneys have qualified immunity from the state law claims being asserted against them by the Peterson Plaintiffs as all the allegations arise out of conduct that occurred in connection with the underlying litigation. There were no allegations that CCJ Attorneys behaved fraudulently, independent of the litigation. Moreover, the breach of fiduciary duty claim fails as a matter of law because CCJ Attorneys had no attorney-client relationship with the Peterson Plaintiffs and therefore, owed no duty to them as alleged estate beneficiaries. Similarly, the fraud claims fail because, as a matter of law, (a) the Peterson Plaintiffs cannot establish reliance on an opposing counsel and (b) there is no duty to disclose on CCJ Attorneys. Further, there has been no allegation of a misrepresentation by CCJ Attorneys or any fact that was not disclosed that they could not discovery. Therefore, the fraud claims should likewise be dismissed as well.

## VI.
## ADOPTION OF OTHER DEFENDANTS' RULE 12 MOTIONS AND CONCLUSION

Other parties moved for dismissal under Rule 12(b). CCJ Attorneys adopt the arguments of these parties and asks for dismissal of the claims against CCJ Attorneys on those grounds also.

WHEREFORE, PREMISES CONSIDERED, CCJ Attorneys pray that this Court GRANT this Motion to Dismiss, dismiss all of the Plaintiffs' claims against CCJ Attorneys with prejudice, and award CCJ Attorneys all such other relief to which they may be justly entitled.

25

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above Rule 12(b)(6) Motion has been served on the 29th day of April, 2016 through the Court's CM/ECF system, which constitutes service on all parties.

/s/ Raul H. Suazo

**RAUL H. SUAZO**